# United States District Court

Southern **DISTRICT OF** California

2008 JAN 16 PM ?:?0
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ KNK _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
Express Mail EE452077553GB addressed to Internet Innovation, 1132 E Plaza Blvd #203 #223, National City 91950 UNITED STATES OF AMERICA

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

**'08 MJ 0137**

I, P.G. Garn, _____ being duly sworn depose and say:

I am a(n) U. S. Postal Inspector _____ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
The above described Mail article, which is in the custody of the San Diego Narcotics Task Force

in the Southern _____ District of California

there is now concealed a certain person or property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841 (a) (1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband.

in violation of Title 21 _____ United States Code, Section(s) 841 (a) (1), 843(b) and 846 .
The facts to support the issuance of a Search Warrant are as follows:
See the attached affidavit of P. G. Garn, Postal Inspector (incorporated by reference here in).

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

1-16-08 _____ at   San Diego CA
Date                                                         City and State

**NITA L. STORMES**
Name and Title of Judicial Officer **U.S. MAGISTRATE JUDGE**   _____
                                                              Signature of Judicial Officer

<u>AFFIDAVIT FOR SEARCH WARRANT</u>

I, P. G. Garn, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector assigned to the San Diego Field Office of the Postal Inspection Service and am detailed to the San Diego Integrated Narcotic Task Force as a Task Force Officer. My duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following parcel:

   > Express Mail EE452077553GB addressed to Internet Innovation, 1132 E Plaza Blvd #203 #223, National City 91950 UNITED STATES OF AMERICA with a return address of ASDA Stores LTD, Capitol Industrial Park, Capitol Way, London NW9 0AS.

3. I have been employed as a Postal Inspector for over 16 years, and have been employed by the Postal Service for over 21 years. I am currently assigned to the San Diego Narcotic Task Force as a Task Force Officer. In 1990 and 1995, I received formal training from the Postal Inspection Service regarding individuals using the U.S. Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions. I have also received formal training from the California Highway Patrol (1994) and United States Postal Inspection Service (1992) regarding the illicit use of controlled substances and the objective symptomatology of individuals who are under the influence of controlled substances. In 1994, I received formal training from the Drug Enforcement Administration (DEA) regarding narcotic investigations including street, mid-level, and major trafficking organizations; presumptive field testing, drug recognition, objective symptomatology

1

of drug use, and investigative techniques. In 2002, I received formal drug interdiction training sponsored by the Drug Enforcement Administration regarding drug interdiction investigations as well as national and international drug trafficking trends. In June and July 2003, I received formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. I received additional formal training from the International Narcotic Interdiction Association regarding drug trafficking and investigative methods in May 2005. In August 2003, I received formal training from the DEA. Since 1994, I have been a member of the California Narcotics Officer Association and have received formal and informal training from this organization as well as read articles written by members regarding drug trafficking and narcotics investigations. Since 1994, I have been a member of the Western States Information Network and have received briefings on drug trafficking trends and investigations by agents, officers, prosecutors and analysts as well as conducted training for other officers, agents, prosecutors and analysts involved in narcotics investigations. I have also conducted training for Postal Inspectors regarding the use of the Postal service to facilitate drug trafficking and money laundering as well as officials with the Australian Federal Police.

4. Since 1991, I have been involved in hundreds of investigations involving the shipment of controlled substances including marijuana, methamphetamine, cocaine, heroin, opium, khat and pharmaceuticals as well as drug proceeds through the U.S. Mail and other commercial shipping companies such as Federal Express and United Parcel Service (UPS). I have also investigated individuals who have used Postal Money Orders to launder the proceeds from controlled substance transactions. These investigations have resulted in the seizure considerable amounts of illicit

drugs, drug related assets and drug related evidence as well as numerous arrests of individuals for violations of federal and state controlled substances laws.

5. Based upon my training, experience and discussions with other agents, I know the following in summary:

(a) The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substances through these companies.

(b) Ongoing investigations have disclosed that Express, Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

(c) Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via "Express Mail" or "Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. "Express Mail" is usually requested to be delivered by the next day's mail.

3. "Priority Mail" is usually requested to be delivered within two days of mailing.

4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

3

5. Any delay to the mail is an indication to the mailer the mailed item(s) have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

6. The information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers and Postal employees. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. I know from my reading articles such as "Khat" published by the U.S. Department of Justice National Drug Intelligence Center in a May 2003 Bulletin (Khat NDIC), discussions with other agents and my own experience the following in summary:

   A. Khat (Catha edulis) is a plant native to northeast Africa and the Arabian Peninsula. The leaves of live plants contain cathinone, a Schedule I Controlled Substance. When harvested this substance begins to deteriorate after about 48 hours and the chemical breaks down into cathine, a Schedule IV controlled substance. Natives of the region

4

typically chew the fresh leaves, but may also brew a tea from the leaves or add them to food. After ingestion of khat, users experience an increase in blood pressure and heart rate. "Abusers claim the drug lifts the spirits, sharpens thinking and increases energy –effects similar to but less intense than those caused by abusing cocaine or methamphetamine (Khat NDIC)." Side effects include manic behavior, paranoia, hallucinations, damage to the nervous, respiratory, circulatory and digestive systems (Khat NDIC). I also know that natives will dry shredded khat leaves, grabba. When the leaves are dried, both cathinone, the Schedule I controlled substance and cathine, the Schedule IV controlled substance are present but not as potent as the fresh plant. However, the dried grabba has a longer shelf life than the fresh khat.

B. NDIC also reports that use of khat is most prevalent among immigrants from Somalia, Ethiopa and Yemen in the US and exportation to the US has increased especially to these communities. Khat sells for approximately $300 to $400 per kilogram in the U.S. Grabba sells for approximately the same price per kilogram.

C. NDIC also reports that khat must be transported quickly because of the relatively rapid deterioration of cathione to cathine. Criminals will often transport khat into the US through Great Britain (United Kingdom) and Canada via package delivery services (such as Express Mail). The NDIC bulletin sites numerous seizures of khat sent in boxes shipped from the United Kingdom. I also know that criminals will also use Express services to ship grabba

D. I know from talking with San Diego Police Officers the following in summary: Khat is grown commercially in Kenya and shipped to markets in Europe including the United Kingdom where it is legal to sell. However

5

the khat from the European countries is sometimes illegally shipped from Europe to the United States and San Diego in particular using Express Mail type services. Some individuals from the East African community in San Diego, particularly taxicab drivers, will use this khat as a stimulant.

E. In San Diego, other investigators and I have encountered khat and grabba that has been shipped via package delivery services including International Express Mail on a number of occasions. These shipments are typically in cardboard boxes sealed with tape. Frequently, shipping employees contact law enforcement officers because the packages have broken open exposing the contraband plants. This appears to occur due to the moist plants breaking down the cardboard box and the weight of the plants tearing through the moist or soggy cardboard.

F. I have seized dozens of parcels containing khat and grabba.

G. I have observed that criminals will often mislabel shipments of khat and grabba as business records, documents or henna.

8. On January 16, 2008, I was contacted by ICE SA Michael Breslin who is assigned to the San Diego Narcotics Task Force. SA Breslin told me the following in summary.

A. In 2006 and 2007, Customs Border Protection (CBP) Officers at the JFK Airport Mail Facility in New York made approximately 6 seizures of approximately 31.5 kilograms of khat that was destined for Internet Innovation, 1132 East Plaza Blvd., Suite 203, Box 223, National City, CA

B. SA Breslin went to 1132 East Plaza Blvd., Suite 203, Box 223, National City, CA which is Mail World, a commercial mail receiving agency, to conduct further investigation. SA Breslin asked employees to contact him if any parcels arrived for Internet Innovation.

    C. On January 16, 2008, employees called SA Breslin and told him a parcel arrived for Internet Innovation [Express Mail EE452077553GB addressed to Internet Innovation, 1132 E Plaza Blvd #203 #223, National City 91950 UNITED STATES OF AMERICA with a return address of ASDA Stores LTD, Capitol Industrial Park, Capitol Way, London NW9 0AS.]

    D. SA Breslin told the employees to hold the parcel until he arrived, and tell anyone who inquired that the parcel had not yet arrived at the store.

    E. SA Breslin responded to Mail World and met with the employees in National City, CA. The employees said a man (subsequently identified as Mohamed Ali Maani) had come into the store and asked if a parcel had arrived for Internet Innovations. The employees told Maani the parcel had not yet arrived. SA Breslin also viewed the parcel which appeared similar to him and me to parcels containing khat. The employees also identified Maani as the subject who had inquired about the package.

    F. SA Breslin and DEA SA David Shadoan contacted Maani who said in summary that he was shopping with his family and had not been inside the Mail World Store. Maani said he did not know what khat was and was not attempting to pick up any parcels. Maani was contacted at a taxi cab in the parking lot and the driver said he had picked up Maani and had driven Manni from the Mid City area of San Diego to the store in National City.

9. On January 16, 2008. I responded to the shopping center in National City, CA and met with SA's Breslin and Shadoan. The following occurred in summary:

    A. I identified my self as a Postal Inspector and asked Maani about the suspect parcel. Maani said he did not know anything about the parcel and had been shopping with his family, but had not been inside Mail World.

7

    B.      I examined the parcel which appeared similar to previous parcels I have seized containing khat for reasons which include:

        a. The parcel was sent from the UK via JFK.

        b. The parcel lists contents as "photographic reproduction...". However, the parcel is slightly damp and the outer cardboard box is soft which is consistent with parcels containing khat that I have encountered in previous investigations.

    C.      I transported the parcel back to the Narcotic Task Force Offices and secured the parcel pending an application for a search warrant.

10.    Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances are being concealed in the Express Mail article as described and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

P. G. Garn

Postal Inspector

Sworn to before me, and subscribed in my presence, on this _16_ day of _JAN._ , 2008.

U. S. Magistrate Judge

8